CALZADO ET AL. *v.* CARRERO ET AL.

APPEAL from the District Court of San Juan.

No. 327.—Decided June 2, 1909.

NULLITY OF PROCEEDINGS TO ESTABLISH OWNERSHIP—SUMMONING OF ADJACENT OWNERS.—According to article 395 of the Mortgage Law, the summoning of adjacent owners is not an indispensable requisite in proceedings to establish the ownership of an estate.

FRAUDULENT SALE—THIRD PERSON.—No one can appear as a third person who is a party to a fraudulent contract, because neither the Mortgage Law nor any other law can protect a fraud.

FRAUD—EVIDENCE REQUIRED.—Something more than mere suspicion is required to establish fraud in a conveyance of land made by public document. Fraud must be proven by evidence which is clear, strong and convincing, for all presumptions are against it.

The facts are stated in the opinion.

*Mr. Antonsanti* for appellant.

The respondent did not appear.

MR. JUSTICE MACLEARY delivered the opinion of the court.

In their complaint the plaintiffs state their cause of action substantially, though not literally, as follows:

"1st. That the defendants Ramón, Cosme, Catalina, Gregorio and Estebanía de la Cruz, with malice and with the intention of disturbing the plaintiffs in the possession and enjoyment of their properties, which were lawfully acquired by them, instituted a proceeding in the District Court of San Juan in order to record in their favor the dominion of the following property: Ninety acres of land, more or less, bounded on the north by lands of the Succession Calzada, on the south by other property of Ramón Sola, on the east by land of Juan López, and on the west by properties of the Febres's succession.

"2d. That through false declarations of witnesses and without the citation of the contiguous land holders to said property nor that of the formers owners of the property, whose possession or dominion was tried to be shown in favor of the defendants, said defendants obtained the declaration which they sought by an order of the District Court of San Juan of the 8th of October, 1902, the dominion of said property being recorded on page 62, of volume 7, of Loíza, property No. 384, first inscription.

"3d. That within the limits shown by the facts the heirs of Juan José de la Cruz, the plaintiffs, have some parcels of land which they acquired by legal titles, they having been for a long time in the peaceful possession of their respective parcels of land. Said possession was never discussed nor interrupted by anyone up to the time when defendants sought to eject the plaintiffs from the land which they had lawfully acquired, without regard to the fact that Juan José de la Cruz and Juan Andrés, of the same name, father and grandfather of the defendants, respectively, had given away their dominion title to the aforesaid property, which is described in the first count of the complaint, instituting the proceedings for the acquisition of the ownership of the land; and basing their rights on such a fraudulent and illegal title they commenced an action of ejectment against the plaintiffs before the District Court of San Juan which was dismissed by said court.

"4th. That the defendants Cruz and Carrero made a combination to defraud the plaintiffs and with such purpose in view they concerted and simulated a contract of purchase and sale of the land referred to in favor of Carrero Alvarez, by a public deed, whose date is unknown to the plaintiffs, and they completed such transaction and recorded the property in the name of the latter in the registry of property, Carrero Alvarez filing a complaint in November, 1906, before the United States District Court in order to eject the actual plaintiffs, said complaint being dismissed by the court.

"5th. That at the time of the execution of the said deed which is mentioned in the previous count the defendant, Carrero, was acquainted with plaintiffs' titles, which were recorded in the registry, and he knew that said plaintiffs were the legitimate owners and were in possession of the land referred to in respective proceedings for dominion.

"6th. That said proceedings for dominion, falsely instituted, are a constant menace to those who are at present the indisputable owners of the land referred to. And the defendants request the court to declare said proceedings for dominion null, ordering the cancellation of the inscriptions made by the registrar, with costs against the defendants."

And this statement was answered by the defendant in substantially the following propositions:

"1st. He admits that his codefendants, de la Cruz, instituted before this court a proceeding to obtain the dominion of the property

described in the first count of the complaint, but this defendant denies that said proceeding was instituted with malice, or with the wish of disturbing the plaintiffs, or any other person, in the possession and enjoyment of their properties, and alleges, on the other hand, that according to the contract said proceedings were instituted with the utmost good faith.

"2d. This defendant admits that the defendants, Cruz, recorded their dominion title in volume seven, page 62, of Loíza, but he denies that said inscription was made by virtue of false declarations of witnesses, maintaining, on the contrary, that said proceeding was carried on in accordance with all the legal requirements and utilizing a perfect right, as then the defendants, Cruz, were the sole owners of the property described in this complaint and which was the object of said proceeding.

"3d. This defendant positively denies that within the limits assigned by the defendants, Cruz, the plaintiffs have any property rights whatever, denying also other things which are stated in count three of the said amended complaint.

"4th. This defendant emphatically denies, that he had an understanding with the defendants Cruz or with any other person to concert or simulate any contract of purchase and sale of said property, and he maintains that with the best good faith, and after an examination of the titles, and being convinced that said Cruz were the only legitimate owners of the property, then it was that he bought said property. That although it is true that this defendant filed a complaint for ejectment against the parties now plaintiff in the Federal Court, said court did not determine anything in reference to the rights of the parties in said action.

"5th. It is also denied, by this defendant, that he had any notice or knowledge in regard to the fact that these plaintiffs or any other person than his vendors, upon the execution of the contract, had any right upon said property, and even less that these rights might appear in the registry of property, and also the defendant denies that these plaintiffs or any of them had any right upon said property."

And the defendants also by way of counter complaint set out new matter as follows:

"1st. That on or about the month of November, 1906, the property to which the amended complaint refers was offered to him on sale, and he visited the same, and after examining all the titles and having

obtained the opinion of an attorney in regard to the sufficiency of said titles, and considered that they had their dominion title recorded in the Registry of Property of San Juan, and that there did not appear any claim made by a third party he bought from Ramón, Cosme, Catalina, Gregorio and Estebanía de la Cruz, the property to which this suit refers by a deed executed on the 20th of November, 1906, before the Notary Mr. Damián Monserrat, which was duly recorded in the registry of property.

"2d. That, therefore, this defendant is the only legitimate owner of said property having better titles thereon than those which might be presented by the plaintiffs, and he requests from the court to dismiss the complaint, in so far as the same refers to this defendant, and to admit this counter claim, declaring that defendant is the only person who has the legitimate ownership of said property and condemning all the plaintiffs not to disturb the defendant in the possession of said property, with the costs against them."

On the trial of the cause, the district court, after hearing the pleadings, the evidence and the argument of counsel, found the law and the facts to be in favor of the plaintiffs and rendered judgment against the defendants on all points; from which judgment this appeal was taken and the case is now before us for consideration.

Counsel for Francisco Carrero, the only one of the respondents who has appealed from the judgment rendered by the court below, alleges in his brief, that the complaint does not set forth facts sufficient to constitute a cause of action, inasmuch as the summoning of adjacent owners is not a requisite that is required by the Mortgage Law in a proceeding of ownership, and he alleges the violation of article 34 of the Mortgage Law in favor of his right, as he bought the estate from the person who appeared in the Registry of Property as the owner with an indisputable right to sell it.

As to the first allegation just mentioned, it is true that article 395 of the Mortgage Law does not require the summoning of adjacent owners to establish the ownership of an estate in the proceedings to be instituted for that purpose; but as the plaintiff has alleged, as ground for his action, other facts by

which the complaint may be sustained, the demurrer alleged in the appeal cannot be held good.

As to the violation of article 34 of the Mortgage Law which it is alleged was violated in this case, we must bear in mind that it is alleged in the complaint that the sale made by the defendants Cruz to Carrero who was also made a defendant, was fraudulent and made with the purpose of defrauding the plaintiffs; and if this is true Carrero cannot maintain his appearance as a third party, because neither the Mortgage Law nor any other law can protect a fraud.

As to the holding of the court below that the conveyance of the land from the defendant, Cruz, to their codefendant, Carrero, was fraudulent it does not appear that the evidence is sufficient. The testimony of the defendant Carrero is clear and conclusive and is uncontradicted except as to the denial by the notary, Monserrat, that the purchase money was paid in his presence. The notary may have been so much engaged in preparing the instrument that the payment of the money escaped his observation. Or Carrero might have thought the notary present when he had stepped into another room for a moment. Agosto, one of the documentary witnesses, corroborates Carrero and the other defendants as to the payment of the money. The testimony of Estebanía de la Cruz is very unsatisfactory. She shows herself to be a very ignorant woman who trusted everything in regard to the sale to her brother, and did not count the money. Her testimony cannot be considered as contradicting that of any one else. In fact it is so indefinite as to be almost worthless. The slight intimation of the pendency of the suit is a very shadowy and insubstantial thing, and is scarcely sufficient to put any one on motion, especially in the absence of the statutory notice required to be given on the register of property.

It requires something more than mere suspicion to establish fraud in a conveyance of land made by a public document. Fraud must be proven by evidence which is clear, strong and convincing for all presumptions are against it. In Moore on

Facts, the law is laid down in very plain and satisfactory terms. See sections 51, 52 and 53 which read substantially as follows:

"Fraud is so multifarious and involves so many degrees of moral guilt, that, according to the better opinion, a higher degree of proof is required than in ordinary civil cases, after making due allowance for the presumption of honesty. In describing the degree of proof necessary to establish a charge of fraud, courts are somewhat addicted to the practice of using phrases implying a higher degree than a mere preponderance. Thus the Supreme Court of Mississippi said: 'Fraud is not a thing to be lightly charged, and most emphatically is not a thing to be lightly established. The stigma which follows from it is not one to be placed upon parties unless the evidence measures squarely up to the requirements of the rule of satisfying a court clearly and convincingly of the truth of the fraud.' Mr. Justice Story said that in order to prove a charge of fraud and conspiracy committed by a dead man—'to make men sin in their graves'—the proof must be beyond reasonable doubt. But in a case where it was held to be erroneous to instruct a jury that proof of fraud 'must be clear and conclusive,' the court said: 'It is not to be denied that such language has been frequently used by courts, and when used by them it expresses an idea which means no more than that the proof must be such as to create belief and not merely suspicion.'

"In regard to the weight of the presumption of innocence of fraud, Chief Justice Black of Pennsylvania said: 'The frequency of fraud upon creditors, the supposed difficulty of detection, the powerful motives which tempt an insolvent man to commit it, and the plausible casuistry with which it is sometimes reconciled to the consciences even of persons whose previous lives have been without reproach—these are the considerations which prevent us from classing it among the grossly improbable violations of moral duty.

" 'Astute as courts should be in the detection of fraud, they are not justified in finding it on grounds which show no more than its possible existence. When the acts of parties admit of a reasonable interpretation in favor of honesty and fair dealing, they should receive it.' In a suit to set aside a fraudulent conveyance 'tangible facts must be proved, from which a legitimate inference of a fraudulent intent can be drawn. It is not enough to create a suspicion of wrong, nor should a jury be permitted to guess at the truth.' 'A mere conjecture, surmise or speculation is not enough' to prove knowledge on

the part of the grantee in all alleged fraudulent conveyance, that the grantor had a fraudulent intent. 'A judge's eye should be quick to discover fraud where it exists, and when discovered he should be resolute in exerting all the powers of the law against it, but he should also be careful not to be misled by false appearance, created by a subtle craft or ingenious surmises.' Fraud may be inferred from facts and circumstances, but when these facts are susceptible of a natural and probable explanation consistently with the good faith and honesty of the parties they do not prove fraud, and the legal conclusion then is in favor of innocence.

"In a case where a will was contested on the ground that it was fabricated, but the jury rendered a verdict in favor of the will, Mr. Justice Crier addressed the jury as follows: 'You must remember that the burden of proof is on the party who alleges fraud. That fraud, though proved by circumstances, can never be presumed, for fraud is a crime. It is not enough to show suspicious circumstances. Suspicion is not proof. It does not require a great deal of ingenuity to cast suspicion of fraud upon any transaction. There is a very great and somestimes grievous error into which not only the public mind, but that of jurors and judges, too, are apt to fall; and which leads to false judgments, and sometimes to great oppression. I would, therefore, specially call the attention of the jury to it and caution them to beware of it. It is this: The law abhors fraud. Every honest mind hates it, and even those who practice it themselves will join in the denunciation of it. It makes them feel virtuous for the time, and they are the most ready, from the arguments of conscience, from judging of others by themselves, to believe it true, and inveigh most loudly against it. When the clamor of fraud is raised in a community, or when it is confidently charged by counsel in a court, we are prone to see all facts through a false medium, which magnifies the importance of every fact upon which suspicion of fraud may be raised; and ignores the plainest inference against it. In the midst of our virtuous indignation against fraud, we first assume it has been committed, and then seek for arguments to confirm, not our judgments, but our prejudice. 'Trifles, light as air,' then become 'strong as proofs of holy writ,' circumstances which to an unprejudiced mind are just as compatible with innocence as guilt, which at best could only raise a suspicion, are set down as conclusive evidence of crime. Those who sit in judgment over men's rights, whether as courts or jurors, should beware of this natural weakness to which we are almost

all of us subject. We all fancy ourselves wiser than perhaps others are willing to give us credit for. This feeling is gratified by what we believe to be superior sagacity. Rogues may be cunning, but they can't deceive us. Under this satisfactory belief, we become over-astute, and often see that which is not to be seen. We suffer our imaginations to take the rein from our judgments, and rush headlong in this chase after the fox called fraud. Circumstances which should avail for the proof of fraud are such only as are inconsistent with a contrary view of the transaction, and lead irresistibly to that conclusion.''

The judgment of the court below being based, at best, on mere suspicions ought not to be allowed to stand. On another trial, perhaps, both parties may be able to throw more light on the subject.

From the facts of the case as they appear in the record we do not find it proved that the defendant Carrero has acted with bad faith and that the title of purchase and sale on which his right is founded, has been simulated nor that there should be legal ground to deny him the right to appear as third party in interest alleged by him.

But these points can be cleared up in another trial where with better evidence a judgment could be rendered in conformity with the rights of the parties.

For the reasons set forth we are of opinion that the judgment of the court below should be reversed and the cause remanded for a new trial.

*Reversed.*

Chief Justice Hernández and Justices Figueras and Wolf concurred.

Justice del Toro took no part in the decision of this case.